The Honorable Karen A. Overstreet
Chapter 11
Location: Seattle, 7206
Hearing Date: To be set
Hearing Time: To be set
Response Date: At Time of Hearing

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re<br><br>PRECISION AIRMOTIVE, LLC,<br><br>Debtor. | Case No. 12-22154<br><br>**MOTION FOR ORDER AUTHORIZING THE DEBTOR TO CONTINUE USING EXISTING BANK ACCOUNTS AND BUSINESS FORMS AND TO MAINTAIN EXISTING CASH MANAGEMENT PRACTICES** |

Precision Airmotive, LLC ("Precision," or the "Debtor"), as debtor and debtor-in-possession, hereby submits this motion (the "Bank Account Motion") and respectfully represents as follows:

**Relief Requested**

1. The Debtor seeks entry of an order: (a) authorizing continued use of its existing cash management system and maintenance of its existing bank accounts; (b) authorizing the continued use of its existing business forms; and (c) modifying the automatic stay. In addition, the Debtor seeks waiver of the notice requirements under Bankruptcy Rule 6004(a) and waiver of the fourteen day stays imposed by Rules 4001(a)(3) and 6004(h).

1 – MOTION FOR ORDER AUTHORIZING THE DEBTOR TO CONTINUE USING EXISTING BANK ACCOUNTS, ETC.

67525-0023/LEGAL25049852.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

### Jurisdiction

2. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, Debtor continues to operate its business and manage its property as a debtor and debtor-in-possession.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M).

### Background

4. On December 7, 2012 (the "Petition Date"), Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5. Precision is a Washington limited liability company headquartered in Marysville, Washington. Precision manufactures and sells fuel control systems for general aviation aircraft. Grafenauer Decl. ¶ 3, 6.

6. Additional information concerning Precision's business activities and the need for restructuring can be found in the declaration of Declaration, filed concurrently with this motion.

7. Prior to the Petition Date, in the ordinary course of business, the Debtor has maintained three bank accounts (the "Bank Accounts"), which the Debtor uses in receiving and disbursing cash. Debtor uses the Bank Accounts to, among other things, manage cash receipts and disbursements for all of the Debtor's day-to-day business operations. Debtor routinely deposits, withdraws, and otherwise transfers funds to, from, and among the Bank Accounts by various methods including electronic funds transfers. In addition, Debtor draws numerous checks on the Bank Accounts every month, to pay employees, vendors, customers, and creditors. Grafenauer Decl. ¶¶ 23-24.

2 – MOTION FOR ORDER AUTHORIZING THE DEBTOR TO CONTINUE USING EXISTING BANK ACCOUNTS, ETC.

67525-0023/LEGAL25049852.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Case 12-22154-KAO    Doc 4    Filed 12/07/12    Ent. 12/07/12 13:22:25    Pg. 2 of 9

8. The following is a summary of the Bank Accounts and other cash management practices of the Debtor:

a. <u>Operating account</u>. The Debtor's primary transactional account is a checking account (the "Checking Account") at Coastal Community Bank ("Coastal"). The Checking Account receives many incoming payments and is the Debtor's primary sources for making disbursements.

b. <u>Sweep account</u>. Debtor maintains a "Sweep Account" at Coastal for purposes of receiving incoming wire transfers. Funds received into the Sweep Account are transferred at the end of each banking day into the Checking Account.

c. <u>Money market account</u>. The Debtor maintains an interest-bearing money market account at Coastal (the "MMA"). The MMA is used to earn interest income on cash balances that are not immediately needed to fund operations.

d. <u>Payroll processing</u>. Debtor pays its employees biweekly (i.e., every two weeks). Payroll is processed by Automatic Data Processing ("ADP"). Each pay cycle, ADP withdraws an amount equal to the total payroll and all payroll taxes (except for Washington Labor and Industries' workers compensation premiums) from the Checking Account and pays net wages to all of Debtor's employees. Debtor directly remits payments for workers compensation tax, employee benefit premiums, and contributions to Precision's 401(k) retirement plan.

e. <u>Credit card receivables</u>. Some of Debtor's customers pay for goods and services with credit or debit cards. In these instances, the Debtor does not collect the funds directly from customers, but rather from the credit card companies or the banks and institutions that process the payment card transactions (collectively, the "Credit Card Companies"). When a customer transacts business with the Debtor

3 – MOTION FOR ORDER AUTHORIZING THE DEBTOR TO CONTINUE USING EXISTING BANK ACCOUNTS, ETC.

67525-0023/LEGAL25049852.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Case 12-22154-KAO    Doc 4    Filed 12/07/12    Ent. 12/07/12 13:22:25    Pg. 3 of 9

using a payment card, the Debtor creates a receivable (the "Credit Card Receivable"). Under their agreements with the Debtor, the Credit Card Companies remit payment to the Debtor, minus their processing fee. In this relationship, the Debtor functions as a merchant while the Credit Card Companies are themselves responsible for collecting payments from each customer. Depending on the terms of their individual agreements, the Credit Card Companies transmit payments for the Credit Card Receivables to the Debtor's Checking Account. Finally, in connection with Credit Card Receivables, the Debtor incurs periodic services charges and other fees in favor of the participating banks, including charges associated with lost or damaged goods, chargebacks, or similar refunds (collectively, the "Service Charges"). As of the Petition Date, (a) certain Service Charges may have accrued but not yet been paid, and (b) the Credit Card Companies may hold amounts owing to the Debtor attributable to sales occurring prior to the Petition Date. The Debtor requests modification of the automatic stay imposed by Section 362 of the Bankruptcy Code to allow the Credit Card Companies to apply amounts owing to the Debtor on account of prepetition sales toward Service Charges that accrued, but were not paid, prior to the Petition Date in a manner consistent with the parties' prepetition practices.

9. The above Bank Accounts, agreements, practices, and systems constitute the Debtor's "Cash Management System."

10. All of the Bank Accounts are located at Coastal, a commercial bank chartered by the State of Washington, at which deposits are insured or guaranteed by the Federal Deposit Insurance Corporation, up to applicable limits.

4 – MOTION FOR ORDER AUTHORIZING THE DEBTOR TO CONTINUE USING EXISTING BANK ACCOUNTS, ETC.

67525-0023/LEGAL25049852.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Case 12-22154-KAO    Doc 4    Filed 12/07/12    Ent. 12/07/12 13:22:25    Pg. 4 of 9

11.     In conducting its business operations, the Debtor also utilizes a wide variety of business forms, including but not limited to, letterhead, purchase orders, invoices, and checks (collectively, the "Business Forms").

**Basis for Relief**

**Cash Management System**

12.     The Cash Management System allows for (a) overall corporate control of funds, (b) cash availability when and where needed by the Debtor, and (c) the reduction of administrative costs through a comprehensive method of coordinating funds collection and movement. The Debtor's smooth transition into Chapter 11 will be greatly enhanced by its ability to maintain the Bank Accounts and continue to operate pursuant to its Cash Management System without interruption.

13.     The Office of the United States Trustee has established certain operating guidelines for debtors-in-possession in order to supervise the administration of Chapter 11 cases. These guidelines require Chapter 11 debtors to, among other things: (i) close all existing bank accounts and open new debtor-in-possession accounts; (ii) establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (iii) maintain a separate debtor-in-possession account for cash collateral; and (iv) obtain checks for all debtor-in-possession accounts which bear the designation "Debtor-in-Possession," the bankruptcy case number, and the type of account.

14.     In light of the Debtor's limited operating funds, an abrupt and wholesale change in Debtor's Cash Management System and Business Forms would be harmful to the Debtor and its operations. The Debtor believes that all parties in interest, including the Debtor's employees, vendors, customers and creditors will be best served by the Debtor preserving business continuity and avoiding the significant disruption and delay to the

5 – MOTION FOR ORDER AUTHORIZING THE DEBTOR TO CONTINUE USING EXISTING BANK ACCOUNTS, ETC.

67525-0023/LEGAL25049852.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Case 12-22154-KAO    Doc 4    Filed 12/07/12    Ent. 12/07/12 13:22:25    Pg. 5 of 9

Debtor's payroll activity and daily business operations that would necessarily result from closing the Bank Accounts, opening new accounts, and waiting for the production of new Business Forms.

15. Through this Bank Account Motion, the Debtor seeks a waiver of the United States Trustee's requirement that the Bank Accounts be closed and that a new postpetition bank account be opened. If enforced in this case, such requirement would cause significant disruption to the Debtor's business, thereby impairing its efforts to maximize the value of its assets.

16. Adopting a new cash management system and opening new bank accounts would be expensive, would create unnecessary administrative burdens, and would be disruptive to Debtor's business operations. Grafenauer Decl. ¶¶ 25-26. Consequently, maintenance of the existing Cash Management System is in the best interests of the estate, creditors, and other interested parties.

17. Accordingly, the Debtor requests that Coastal be authorized to continue to administer the Bank Accounts, without interruption and in the ordinary course, and to pay any and all checks, drafts, wires, ACH transfers, or other transfers drawn on the Bank Accounts after the Petition Date (or otherwise authorized by the Court) so long as sufficient available funds are present in the Bank Accounts.

18. The Debtor represents that if the requested relief is granted, it will not pay, and Coastal will be directed not to pay, any debts incurred by the Debtor before the Petition Date other than as authorized by this Court, including as requested in the Debtor's payroll motion that is filed concurrently with this Bank Account Motion. The Debtor will continue to work closely with Coastal to ensure that appropriate procedures are in place so that

6 – MOTION FOR ORDER AUTHORIZING THE DEBTOR TO CONTINUE USING EXISTING BANK ACCOUNTS, ETC.

67525-0023/LEGAL25049852.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Case 12-22154-KAO    Doc 4    Filed 12/07/12    Ent. 12/07/12 13:22:25    Pg. 6 of 9

checks issued before, but presented after, the Petition Date will not be honored absent approval from this Court.

19. In addition, to minimize expenses to the estate, the Debtor also requests that it be authorized to continue to use all Business Forms existing immediately before the Petition Date, without reference to the Debtor's status as a debtor-in-possession.

20. Parties doing business with the Debtor undoubtedly will be aware of its status as a debtor-in-possession as a result of the notice of this case provided to virtually all of the Debtor's creditors. A requirement that the Debtor change its Business Forms would be expensive and burdensome to the Debtor's estate and disruptive to the Debtor's operations. Grafenauer Decl. ¶ 26.

**Credit Card Companies and Service Fees**

21. As of the Petition Date, the Debtor likely owed Service Charges to the Credit Card Companies and, conversely, the Credit Card Companies likely held Credit Card Receivables due to the Debtor based on sales made prior to the Petition Date. The money held by the Credit Card Companies and owed to the Debtor is critical to the operation of the Debtor's business. The Credit Card Companies may be unwilling to remit those funds, however, until all Service Charges with respect to prepetition sales become known (which depends in part on whether customers make future claims based on lost or damaged goods) and, instead, may attempt to withhold the maximum amount possible in order to have sufficient funds available to setoff against prepetition Service Fees.

22. To provide the Debtor with much needed cash while, at the same time, providing assurances to the Credit Card Companies that the Service Fees will be paid, the Debtor requests that the Court enter an order modifying the automatic stay, authorizing the Creditor Card Companies to setoff amounts owed to the Debtor against prepetition Service

7 – MOTION FOR ORDER AUTHORIZING THE DEBTOR TO CONTINUE USING EXISTING BANK ACCOUNTS, ETC.

67525-0023/LEGAL25049852.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Case 12-22154-KAO    Doc 4    Filed 12/07/12    Ent. 12/07/12 13:22:25    Pg. 7 of 9

Fees; *provided however* that the amount the Credit Card Companies are authorized to setoff in the future shall be no greater than the amount of funds any Credit Card Company held as of the Petition Date, and such setoffs must be consistent with the parties' ordinary course of business prior to the Petition Date under the applicable agreements.

23. Debtor further requests that, as to the modification of the automatic stay requested in the previous paragraph, the Court waive the fourteen day stay imposed by Bankruptcy Rule 4001(a)(3).

24. Payment of the prepetition Service Charges is in the best interests of the Debtor and all parties in interest in this Chapter 11 case, as it will prevent any disruption to the Cash Management System. Further, because the Credit Card Companies likely have setoff rights for the Service Charges, payment of prepetition Service Charges should not alter the rights of unsecured creditors in this case.

### Notice

25. No request has been made for the appointment of a trustee or examiner, and no official creditors committee has yet been established in this case.

26. Notice of this Bank Account Motion has been given by electronic mail, facsimile, or overnight courier to: (a) the Office of the United States Trustee; (b) Coastal Community Bank; (c) each of the Debtor's twenty largest unsecured creditors; and (d) all parties known by the Debtor to claim any lien on or security interest in any of Debtor's assets.

### Waiver of Rule 6004(a) and (h)

27. To successfully implement the foregoing, to the extent that any aspect of the relief sought herein constitutes a use of property under section 363(b) of the Bankruptcy

8 – MOTION FOR ORDER AUTHORIZING THE DEBTOR TO CONTINUE USING EXISTING BANK ACCOUNTS, ETC.

67525-0023/LEGAL25049852.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Case 12-22154-KAO    Doc 4    Filed 12/07/12    Ent. 12/07/12 13:22:25    Pg. 8 of 9

Code, the Debtor respectfully requests a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay under Bankruptcy Rule 6004(h).

**Rule 6003(b)**

28. Bankruptcy Rule 6003(b) empowers a court to grant relief within the first 20 days after the filing of a petition "to the extent that relief is necessary to avoid immediate and irreparable harm." Ultimately, because of the complexity of the Debtor's operations, any disruption to the Cash Management System or Bank Accounts would seriously harm the Debtor's estate. Accordingly, the Debtor meets the "immediate and irreparable harm" standard of Bankruptcy Rule 6003(b).

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the relief requested in this Bank Account Motion, and such other and further relief as is just and proper.

DATED: December 7, 2012

**PERKINS COIE LLP**

By: /s/ John S. Kaplan
John S. Kaplan, WSBA No. 23788
JKaplan@perkinscoie.com
1201 Third Ave., Suite 4800
Seattle, WA 98101
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Debtor Precision Airmotive, LLC

9 – MOTION FOR ORDER AUTHORIZING THE DEBTOR TO CONTINUE USING EXISTING BANK ACCOUNTS, ETC.

67525-0023/LEGAL25049852.1

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Case 12-22154-KAO    Doc 4    Filed 12/07/12    Ent. 12/07/12 13:22:25    Pg. 9 of 9